UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS NAY,<br><br>                    Petitioner,<br><br>v.<br><br>KEITH YORDY, Warden,<br><br>                    Respondent. | Case No. 1:14-cv-00504-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Douglas Nay's Petition for Writ of Habeas Corpus, challenging his state court convictions, in two separate cases, of vehicular manslaughter and delivery of a controlled substance. (Dkt. 1.) The Petition is now fully briefed. (Dkt. 12 & 13.) The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on May 5, 2015. (Dkt. 9.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary.

**MEMORANDUM DECISION AND ORDER - 1**

*See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order

denying habeas corpus relief.

## BACKGROUND

In two separate cases in the Fourth Judicial District Court in Ada County, Idaho,

Petitioner pleaded guilty, in a "package deal," to one count of delivery of a controlled

substance and one count of vehicular manslaughter. (State's Lodging A-2 at 8.) The

delivery conviction stemmed from Petitioner's sale of drugs to an undercover police

officer. (State's Lodging A-3 at 5.) The vehicular manslaughter conviction "stemmed

from an incident where [Petitioner] lost consciousness while driving, crossed over

multiple lanes of traffic, and collided with an oncoming vehicle"—investigating officers

found drugs in Petitioner's vehicle. (State's Lodging D-6 at 4 n.2; A-3 at 3.) As Petitioner

informed the trial court, "I was basically coming down off of meth, and I believe fell

asleep behind the wheel of my vehicle. I swerved across the lanes of traffic and had a

head-on collision with a gentleman, and it resulted in his death." (State's Lodging A-2 at

21.) Petitioner was taken to the hospital after the crash, where his blood and urine tested

positive for methamphetamine and amphetamine. (State's Lodging A-2 at 24.) At the

hospital, Petitioner also "made statements to police." (State's Lodging D-6 at 4 n.2.)

In exchange for Petitioner's guilty pleas, the prosecution dismissed additional

charges in both cases. (State's Lodging B-4 at 1.)

The two cases were consolidated for sentencing purposes. Petitioner was

sentenced to a unified term of 15 years in prison with 10 years fixed on the manslaughter

count, and a concurrent unified term of life in prison with 7 years fixed on the delivery

**MEMORANDUM DECISION AND ORDER - 2**

count. (State's Lodging B-4 at 1.) Petitioner filed an unsuccessful motion for reduction of sentence under Idaho Criminal Rule 35. (Dkt. 1-1 at 2; State's Lodging D-6 at 7; State's Lodging A-7.) Petitioner also filed a direct appeal in both cases, arguing that his sentence was excessive; the appeals were consolidated. (State's Lodging B-1, B-4, D-6.) Petitioner did not file a separate appeal of the denial of his Rule 35 motion. The Idaho Court of Appeals affirmed Petitioner's sentence, and the Idaho Supreme Court denied review. (State's Lodging B-4 & B-6.)

Petitioner then filed a petition for state postconviction relief, as to both cases, contending that his trial counsel rendered ineffective assistance in several ways. (State's Lodging C-1 at 3-8.) The state district court dismissed the petition. Petitioner appealed the dismissal, and the Idaho Court of Appeals affirmed. (State's Lodging D-6.) The Idaho Supreme Court accepted Petitioner's untimely petition for review, but then denied it. (State's Lodging D-10 & D-11.)

In his federal Petition, Petitioner asserts the following claims:

> Claim 1:    Ineffective assistance of trial counsel based on counsel's failure to move to suppress statements that Petitioner provided to police officers while lying in a hospital bed.
>
> Claim 2:    (a) Denial of due process based on allegedly inaccurate information in the pre-sentence investigation report, (b) ineffective assistance of trial counsel based on counsel's failure to object to that information, and (c) prosecutorial misconduct based on the prosecutor's procurement and use of that information.

**MEMORANDUM DECISION AND ORDER - 3**

| Claim 3: | Ineffective assistance of trial counsel based on counsel's conduct in (a) failing to properly investigate the charges against Petitioner, (b) failing to test Petitioner's blood and urine, (c) influencing Petitioner to plead guilty by promising him a lower sentence than he actually received, (d) failing to appeal Petitioner's sentence after the court denied his Rule 35 motion, and (e) failing to consult with Petitioner before filing a Rule 35 motion for reduction of sentence.[1] |
| --- | --- |
| Claim 4: | Denial of counsel during Petitioner's postconviction proceedings.[2] |

(Dkt. 1.)

## ALL OF PETITIONER'S CLAIMS WERE DENIED ON THE MERITS BY THE IDAHO COURT OF APPEALS

As an initial matter, the Court rejects Respondent's contention that Claim 3(e)—which asserts that trial counsel rendered ineffective assistance in failing to consult with Petitioner prior to filing the Rule 35 motion for reduction of sentence—is procedurally defaulted. (*See* Dkt. 12 at 21.)

## 1.   Procedural Default Standard of Law

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's

---

[1]   Claim 3 also complains of counsel's failure to file the motion to suppress, but that sub-claim is already set forth in Claim 1.

[2]   Claim 4 also complains of counsel's failure to appeal the denial of Petitioner's Rule 35 motion for reduction of sentence, but that sub-claim is already set forth in Claim 3(d).

MEMORANDUM DECISION AND ORDER - 4

established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Id.* at 161-62. Subject to certain exceptions, a federal court generally may not consider procedurally defaulted habeas claims. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

## 2.      Claim 3(e), Like All of Petitioner's Other Claims, Is Not Procedurally Defaulted

Contrary to Respondent's allegation, Petitioner clearly raised Claim 3(e) to the Idaho appellate court. (*See* State's Lodging D-3 at 3 (arguing, on appeal from the dismissal of the postconviction petition, that counsel "did not consult with the [Petitioner] regarding any of the issues that he wanted to have brought before the Court").)

The Idaho Court of Appeals did not explicitly address Claim 3(e). Nor did that court explicitly address Claims 2(a) and 2(c)—which allege a due process violation and

**MEMORANDUM DECISION AND ORDER - 5**

prosecutorial misconduct with respect to inaccurate information included in the PSI. (*See* State's Lodging D-6.) Like Claim 3(e), Petitioner clearly raised Claims 2(a) and 2(c) on appeal from the denial of his postconviction petition. (State's Lodging D-3 at 6-7 (arguing that the false information included in the PSI "violates Due Process of Law," and that "it was the prosecutor who gave this false information to the Pres-sentence investigator to use in the PSI. This is a claim of prosecutorial misconduct.").)

However, that the court of appeals did not expressly address these claims does not mean that the court did not consider them. Indeed, because the court of appeals did not identify any procedural bar to these claims, and none is apparent from the record, the Court presumes that the state court decided these claims on the merits. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) (holding that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary," even if the state court decision is silent as to the reason for the denial).

Having determined that all of Petitioner's claims were adjudicated on the merits by the state court, the Court now considers whether Petitioner is entitled to habeas relief on any of those claims.

## STANDARD OF LAW FOR REVIEW ON THE MERITS

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

**MEMORANDUM DECISION AND ORDER - 6**

§ 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances

where the state court's adjudication of the petitioner's claim

> (1)     resulted in a decision that was contrary to, or
>         involved an unreasonable application of, clearly
>         established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an
>         unreasonable determination of the facts in light
>         of the evidence presented in the state court
>         proceeding.

28 U.S.C. § 2254(d). Although a federal habeas court reviews the state court's "last

reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 804 (1991), a state court need not "give reasons before its

decision can be deemed to have been 'adjudicated on the merits'" under § 2254(d).

*Richter*, 562 U.S. at 100.

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002).

**MEMORANDUM DECISION AND ORDER - 7**

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted). To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 8**

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in

**MEMORANDUM DECISION AND ORDER - 9**

state court proceedings: (1) when state courts fail to make a finding of fact; (2) when state courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This strict deferential standard of § 2254(d) applies to habeas claims except in the following narrow circumstances: (1) where the state appellate court did not decide a properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In those circumstances, the federal district court reviews the claim de novo. In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a

**MEMORANDUM DECISION AND ORDER - 10**

state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1). Rather, the federal district court may consider evidence outside the state court record, except to the extent that §2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

Even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence" on the petitioner's criminal proceedings. *O'Neal v. McAninch*, 513 U. S. 432, 436 (1995) (internal quotation marks omitted). A "reasonable possibility" of prejudice is insufficient. *Brecht*, 507 U.S. at 637.

## DISCUSSION OF CLAIM 2(a) AND 2(c): FALSE INFORMATION IN THE PSI AND PROSECUTORIAL MISCONDUCT AT SENTENCING

Claims 2(a) and 2(c) assert a denial of due process based on allegedly inaccurate information in the pre-sentence investigation report, as well as prosecutorial misconduct based on the prosecutor's alleged procurement and use of that information.

### 1.    Factual Basis for Claims 2(a) and 2(c)

The report of the presentence investigation ("PSI") included an email written to the judge by the victim's wife. Some of the information included in the email—specifically, the victim's wife's belief that Petitioner had said the victim deserved to die—was inaccurate. Specifically, the victim's wife stated as follows:

**MEMORANDUM DECISION AND ORDER - 11**

> *When my daughter . . . and I met with [the prosecutor] he told me that [Petitioner] had wrote a letter stating that "Tom [the victim] deserved to die" and "it was Toms fault he died".* I felt like I truly had been kicked in the stomach. How could [Petitioner] or any person with a sense of empathy or compassion or conscience say such a thing about Tom. To me it just shows the arrogance, smug, cold hearted, irresponsibility of [Petitioner] and [Petitioner] need to be accountable for his actions.

(State's Lodging A-3 (emphasis added) (verbatim).)

At sentencing, the prosecutor brought this issue to the attention of the court and corrected the inaccuracy:

| | |
|---|---|
| [Prosecutor]: | Judge, there is one discrepancy I would like to point out, and that is with regards to this latest addendum . . . it's a two-page single-space letter, in the form . . . of an e-mail from [the victim's wife.] |
| | In the last paragraph, Judge, she references a meeting that we had in which she claims that I told her that the defendant had wrote a letter saying that, quote, "Tom had deserved to die, and that it was Tom's fault he died," and she felt like she had been kicked in the stomach. |
| | I have reviewed that—that struck me as inaccurate. And, in fact, I believe— |
| The Court: | I hope so. |
| [Prosecutor]: | *—it is inaccurate, and I talked to the victim witness coordinator to make sure that that was also her point of view on it, and she agreed.* |
| The Court: | Good, because I think some things don't need to be shared. |

**MEMORANDUM DECISION AND ORDER - 12**

| | |
|---|---|
| [Prosecutor]: | Correct. And so, Judge, I think was she's referring to is what's included in the presentence investigation report. . . . *[T]here is a . . . handwritten letter from the defendant to his girlfriend—* |
| The Court: | Right. |
| [Prosecutor]: | *—in which the defendant talks about how that the victim took his life into his own hands because his seat wasn't bolted,* et cetera, and those were things that we shared as far as telling them *what we think that the defensive strategy was going to be in the case.* |
| | *It wasn't a matter of us telling the victim—and I can't control too much. I didn't realize there was a miscommunication going on there. We never said that he deserved to die, or anything like that,* and so I hope—I want to make— |
| The Court: | I don't think that some information needs to be shared— |
| [Prosecutor]: | Correct. |
| The Court: | —with crime victims. |
| [Prosecutor]: | Correct. |

(State's Lodging A-2 at 39-41 (emphasis added) (verbatim).) As explained by the prosecutor, the victim's wife misunderstood the prosecutor's statements as to what Petitioner's defense would likely be—that the victim was driving an unsafe vehicle— which led to her perceived belief that Petitioner thought the victim deserved to die.

Petitioner's counsel then stated that he was "also troubled by that [email from the victim's wife]. We thank the State for the correction and the clarification on that. There

**MEMORANDUM DECISION AND ORDER - 13**

was certainly no intent on [Petitioner's] part to at all besmirch the name of the victim of this crime." (*Id.* at 41-42.) When Petitioner addressed the trial court at sentencing, he took full responsibility for the death of the victim:

> I would like to begin by expressing my deepest regrets to the family of [the victim].
>
> . . . .
>
> No, I'm not seeking your sympathy for this pain. I know this was brought on by my own actions.
>
> In addition, I know I cannot do or say anything to replace [the victim] in your lives. But please understand I am surely grieved by the pain that my actions have caused for your family, as well as my own.

(*Id.* at 55-56.)

The trial court did not rely on the inaccurate information in the PSI. Although the judge noted that the victim's car was older, "had some modifications," and had a seat that "wasn't well secured and didn't have some of the safety gear it needed," the court never mentioned Petitioner's alleged statements with respect to these issues as causing the death of the victim; moreover, the court did not state that it believed Petitioner thought the victim deserved to die. (*Id.* at 58.) Instead, in sentencing Petitioner the judge relied on her determination that the accident was not something that "[came] out of some short-term bad decisions," but was instead "something that came out of a lot of bad decisions for a long time." (*Id.* at 60-61.)

**MEMORANDUM DECISION AND ORDER - 14**

## 2.      Petitioner Is Not Entitled to Relief on Claims 2(a) or 2(c)

The Due Process Clause of the Fourteenth Amendment guarantees that a criminal

defendant receive "[a] fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136

(1955). More specifically, due process prohibits a prosecutor from knowingly relying on

false evidence. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). Further, although a

prosecutor has a "duty to refrain from improper methods calculated to produce a

wrongful conviction," *Berger v. United States*, 295 U.S. 78, 88 (1935), such methods will

warrant habeas relief only if they "'so infected the trial with unfairness as to make the

resulting conviction a denial of due process,'" *Darden v. Wainwright*, 477 U.S. 168, 180

(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

A court must consider the record as a whole when making such a determination,

because even a prosecutor's inappropriate or erroneous comments or conduct may not be

sufficient to undermine the fairness of the proceedings when viewed in context. *See

United States v. Young*, 470 U.S. 1, 16-17 (1985); *Darden*, 477 U.S. at 182 (applying

*Young*); *see also DeChristoforo*, 416 F.3d at 647-48 (distinguishing between "ordinary

trial error of a prosecutor" and the type of "egregious misconduct . . . [that] amount[s] to

the denial of constitutional due process"). When reviewing prosecutorial misconduct

claims under the "unreasonable application" prong of § 2254(d)(1), a court must keep in

mind that this standard is a "very general one" that affords courts "leeway in reaching

outcomes in case-by-case determinations." *Parker v. Matthews*, 132 S. Ct. 2148, 2155

(2012) (per curiam) (internal quotation marks and alterations omitted).

**MEMORANDUM DECISION AND ORDER - 15**

The Court has been unable to find a single Supreme Court case discussing due process as it relates to inaccurate information included in a presentence investigation report, where the prosecutor *corrected* that information at the sentencing hearing and the trial court did not rely on the inaccurate information when sentencing the defendant. Therefore, the Idaho Court of Appeals did not base its decision on an unreasonable application of clearly-established Supreme Court precedent.

Further, there is nothing in the record to support Petitioner's claim that the prosecutor intentionally provided false information to the victim's family—rather, there was a miscommunication that the prosecutor corrected at the sentencing hearing. As noted by the trial court, certain things—such as anything Petitioner might have said that could have cast a negative light on the victim—should not be shared with a victim's family. However, it was not misconduct for the prosecutor to discuss what he believed Petitioner would claim as a defense. Further, the prosecutor corrected the inaccuracy on the record, and Petitioner has not shown prejudice from the miscommunication between the prosecutor and the victim's family. *See Brecht*, 507 U.S. at 637; *O'Neal*, 513 U. S. at 436. It is clear from the transcript that the trial court did not consider the inaccurate information in fashioning Petitioner's sentence. (See State's Lodging A-2 at 57-65.)

For these reasons, Petitioner is not entitled to relief on Claims 2(a) or 2(c).

## DISCUSSION OF CLAIMS 1, 2(b), AND 3(a) THROUGH 3(e): INEFFECTIVE ASSISTANCE OF COUNSEL

Claim 1 of the Petition asserts that Petitioner's counsel rendered ineffective assistance in failing to file a motion to suppress statements that Petitioner made while he

was in the hospital. Claim 2(b) asserts that counsel was ineffective in failing to object to the inclusion of false information in the PSI. Claim 3 asserts that counsel was ineffective for (a) failing to properly investigate the charges against Petitioner, (b) failing to test blood and urine, (c) causing Petitioner to plead guilty by promising him a lower sentence than he actually received, (d) failing to appeal the denial of Petitioner's Rule 35 motion, and (e) failing to consult with Petitioner before filing a Rule 35 motion for reduction of sentence.

## 1.    Clearly-Established Law

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel claims was identified by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to

**MEMORANDUM DECISION AND ORDER - 17**

conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Id.* at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

**MEMORANDUM DECISION AND ORDER - 18**

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute ineffective assistance simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court

> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Pinholster*, 563 U.S. at 190.

## 2.    Petitioner Is Not Entitled to Relief on Claims 1, 2(b) or any of His Claim 3 Sub-Claims

### A.    *Claim 1: Failing to Move to Suppress Petitioner's Statements*

Petitioner argues in Claim 1 that his defense attorney should have moved to suppress the statements that Petitioner made to the police after the accident, while he was in the hospital.

i.    <u>Factual Basis for Claim 1</u>

It is unclear precisely what Petitioner said to the police at the hospital, but during the prosecution's recitation of the factual basis for the plea, the state alleged the following:

> When [Petitioner] talked to the officer in the hospital a
> few day after [the accident], he told the officer that, in fact,

**MEMORANDUM DECISION AND ORDER - 20**

he—well, first he denied using methamphetamine, and then both of them.

He said that—when the officers said, "Look, we have your urine," he says—the defendant said, "Well, it's going to be hot for methamphetamine, then," and admitting that he had used into the day before—two days before.

So the indication here is not that he was high on methamphetamine at the high point, but he was crashing on methamphetamine, and so the numbers in his blood certainly reflect that, Your Honor.

(State's Lodging A-2 at 24.)

In discussing the statements Petitioner made to the police, Petitioner's attorney told the court,

And I have discussed this with [Petitioner], and he did conduct an interview with the police. He did not give any information that ultimately, I think, led to his immediate conviction.

And we went over whether or not a suppression motion would be in order, and we made the determination that a suppression motion was not going to be necessary.

(*Id*. at 14.)

ii.   The State Court's Decision on Claim 1 Was Not Unreasonable

In addressing Claim 1, the Idaho Court of Appeals correctly cited *Strickland* as the governing law with respect to ineffective assistance of counsel claims. (State's Lodging D-6 at 3.) The court relied on the guilty plea advisory form signed by Petitioner, which acknowledged that, because of his guilty plea, Petitioner "would not be able to challenge any ruling that came before the guilty plea including . . . any issues about any statements you have made to law enforcement." (*Id*. at 4.) That form, combined with the plea

**MEMORANDUM DECISION AND ORDER - 21**

colloquy—in which Petitioner's attorney informed the court that he and Petitioner had discussed whether to file a motion to suppress and had decided against it—led the Idaho Court of Appeals to conclude that Petitioner had not raised the possibility of a valid ineffectiveness claim with respect to a suppression motion. (*Id.*)

The decision of the court of appeals was reasonable. The evidence in the record shows that defense counsel discussed the suppression issue with Petitioner and that they decided not to file a suppression motion. Petitioner has not shown that the decision not to file the motion was anything other than a reasonable, strategic decision. *See Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). Therefore, Petitioner is not entitled to habeas relief on Claim 1.

### B.      *Claim 2(b): Failing to Object to Inaccurate Information in PSI*

Claim 2(b) asserts that Petitioner's counsel rendered ineffective assistance during sentencing by failing to object to the inaccurate information included in the victim's wife's email, which was in turn included in the PSI.

Respondent argues that Claims 2(b)—which alleges ineffective assistance of counsel with respect to sentencing—must be denied because there is no clearly-established Supreme Court law applying the *Strickland* standard (or any other standard, for that matter) to noncapital sentencing proceedings. (Dkt. 12 at 15-16.) In light of current and binding Ninth Circuit authority, the Court agrees with Respondent.

**MEMORANDUM DECISION AND ORDER - 22**

In *Strickland* itself, the Supreme Court declined to determine whether its IAC standard applied to noncapital sentencing hearings, but instead limited its holding to trial and to capital sentencing proceedings:

> We need not consider the role of counsel in an ordinary [noncapital] sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance. A capital sentencing proceeding like the one involved in this case, however, is sufficiently like a trial in its adversarial format and in the existence of standards for decision, that counsel's role in the proceeding is comparable to counsel's role at trial—to ensure that the adversarial testing process works to produce a just result under the standards governing decision.

*Strickland*, 466 U.S. at 686-87 (internal citations omitted).

Although it is arguable that later decisions establish that the *Strickland* standards apply more generally to all IAC claims, the Ninth Circuit has already held, in *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006), and *Cooper-Smith v. Palmateer,* 397 F.3d 1236, 1244 (9th Cir. 2005), that "there is no clearly established law in th[e] context" of claims of IAC at noncapital sentencing proceedings. *See also Daire v. Lattimore*, 780 F.3d 1215, 1222 (9th Cir. 2015) ("As a three-judge panel of this circuit, . . . we are bound by prior panel opinions . . . . Were we writing on a clean slate, we might conclude that it was clearly established that the *Strickland* standard applies, but the slate is not clean."), *withdrawn on grant of reh'g en banc*, 803 F.3d 381 (9th Cir. Aug. 28, 2015).

Unless and until the Ninth Circuit revisits its conclusion that there is no clearly-established law in the context of claims of IAC at noncapital sentencing, the Court follows the Ninth Circuit's lead. *See Duhaime*, 200 F.3d at 600-01. Therefore, Claim 2(b)

**MEMORANDUM DECISION AND ORDER - 23**

fails for the reason that there is no clearly-established Supreme Court precedent applying *Strickland*, or any other IAC standard, to noncapital sentencing proceedings.

However, the Court need not rest its decision as to Claim 2(b) on this basis alone. The Ninth Circuit has granted rehearing en banc in *Daire*, *see* 803 F.3d 381 (9th Cir. Aug 28, 2015), and the en banc court has the authority to overrule circuit precedent. *Daire* was submitted to the en banc court for decision on January 12, 2016. (See Dkt. 62, 9th Cir. Case No. 12-55667). It is conceivable the en banc court might hold that the Supreme Court *has* clearly established *Strickland*'s applicability to noncapital sentencing proceedings, thereby overruling *Davis* and *Cooper-Smith*.

Therefore, concerns of judicial efficiency counsel in favor of an alternative holding in this matter. Although the Court agrees that the Supreme Court has not clearly established *Strickland*'s applicability during noncapital sentencing proceedings, the Court will nonetheless consider whether—assuming *Strickland* does clearly apply to claims of IAC at noncapital sentencing proceedings—that standard has been met as to Claim 2(b).

The Idaho Court of Appeals rejected Claim 2(a), under *Strickland*, based on the fact that the prosecutor *corrected* the miscommunication that led to the inaccurate information provided by the victim's wife. The court also concluded that Petitioner was not prejudiced by any suggestion in the PSI that he blamed the victim because Petitioner "addressed the district court at sentencing, expressed remorse, and acknowledged his actions resulted in the victim's death." (State's Lodging D-6 at 5.) This decision was not based on an unreasonable determination of the facts or on an unreasonable application of

**MEMORANDUM DECISION AND ORDER - 24**

*Strickland. See* 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief on Claim 2(b).

### C.  Claims 3(a) and 3(b): Failing to Properly Investigate the Charges against Petitioner—Specifically, Failing to Independently Test Petitioner's Blood and Urine Taken after the Accident

The only specific allegation Petitioner makes regarding his attorney's allegedly inadequate pre-plea investigation is that counsel failed to independently test Petitioner's blood and urine for methamphetamine. (Dkt. 1 at 8.) Therefore, Claim 3(a), failure to undertake an adequate investigation, and Claim 3(b), failure to test Petitioner's blood and urine, are essentially a single claim.

The Idaho Court of Appeals rejected Petitioner's contention that counsel should have independently verified the forensic tests of Petitioner's blood and urine. The tests indicated that Petitioner "was coming down off of methamphetamine at the time he crashed," and Petitioner "confirmed this during allocution." (State's Lodging D-6 at 6-7.) The court noted that Petitioner did not explain "how these test results were deficient or explained what further testing would have accomplished." (State's Lodging D-6 at 7.)

The court of appeals' decision on Petitioner's forensic testing IAC claim was not unreasonable. Petitioner claims that an independent test would have shown that he did not have methamphetamine in his system, but Petitioner has provided no evidence to support his conclusory statement. Further, Petitioner has not established that, if his counsel had tested the blood and urine, Petitioner would not have pleaded guilty but, instead, would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Petitioner acknowledged that he was "coming down" from methamphetamine when he fell asleep at the wheel and killed

**MEMORANDUM DECISION AND ORDER - 25**

the victim. There is nothing to indicate the Idaho Court of Appeals' rejection of this claim

was unreasonable. *See* 28 U.S.C. § 2254(d).

### D.      Claim 3(c): Allegedly Promising a Lower Sentence

Claim 3(c) asserts that Petitioner's attorney promised Petitioner that he would

receive a lower sentence if he pleaded guilty. In rejecting this claim, the Idaho Court of

Appeals relied on the guilty plea advisory form, which Plaintiff signed and which

provided as follows:

> I understand that my plea agreement is a non-binding plea
> agreement. This means that *the judge is not bound by the*
> *agreement or any sentencing recommendations, and may*
> *impose any sentence authorized by law, up to the maximum*
> *sentence for any offense*. Because the court is not bound by
> the agreement, if the district court chooses not to follow the
> agreement, I will not have the right to withdraw my guilty
> plea.

(State's Lodging D-6 at 6 (emphasis added).) The court also relied on Petitioner's

statement, during the plea colloquy, that he had not been promised any leniency from the

court.

The Idaho Court of Appeals' rejection of Claim 3(c) was reasonable. Petitioner's

contention that defense counsel promised him a lower sentence is belied by the record.

As the plea colloquies demonstrate, Petitioner had not been promised any particular

sentence in exchange for his guilty pleas and was well aware of the maximum sentence.

In the vehicular manslaughter case, the trial court engaged in the following

discussion with Petitioner:

> Q.      And do you know what the State has to prove to prove
>         vehicular manslaughter?

**MEMORANDUM DECISION AND ORDER - 26**

A.     I do, ma'am.

Q.     And you know the maximum possible penalty for that?

A.     Yes.

Q.     *Has anybody promised you that I would be easy on you* if you would plead guilty for that?

A.     *No, ma'am*.

Q.     Has anybody threatened you, or pressured you, or pressured somebody close to you, to make you plead guilty?

A.     No, ma'am.

Q.     Has anybody offered you a reward or incentive to plead guilty?

A.     No.

Q.     Has—are you pleading guilty even though you think you are innocent, just because you want to get it over with?

A.     No. No, ma'am.

. . . .

Q.     Now, when did you decide you wanted to plead guilty?

A.     *I have been wanted to plead guilty for a quite a while now. Just the fear of it, I guess, this action*.

Q.     So you have been thinking about it for a while, then?

A.     Um-hmm.

Q.     Have you had enough time to talk to your lawyer?

A.     I have.

Q.     When you talked to your lawyer, did you tell him what had happened?

**MEMORANDUM DECISION AND ORDER - 27**

> A.    Yes.
>
> Q.    Did he tell you to your satisfaction what your rights and defenses are?
>
> A.    Yes, ma'am.
>
> Q.    *Did he talk to you about the consequences of pleading guilty?*
>
> A.    *He did.*
>
> Q.    Is there anything you wanted him to do that he hasn't done?
>
> A.    No, ma'am.

(State's Lodging A-2 at 12-17 (emphasis added).) The plea colloquy with respect to the delivery charge was similar. (*Id*. at 31-36.)

The state appellate court appropriately cited and applied *Strickland* and determined that Petitioner had not established ineffective assistance. Because the record supports the court of appeals' finding that Petitioner's counsel did not promise a lower sentence, as well as its conclusion that Petitioner could not show prejudice from any deficient advice, Petitioner is not entitled to relief under AEDPA on Claim 3(c).

### E.    *Claim 3(d): Failing to Appeal Denial of Rule 35 Motion*

Petitioner also claims that his counsel provided ineffective assistance by failing to appeal the denial of Petitioner's Rule 35 motion for reduction of sentence. In addition to the general ineffective assistance standard set forth in *Strickland*, there is specific precedent regarding claims of ineffective assistance based on counsel's failure to file an appeal. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would

**MEMORANDUM DECISION AND ORDER - 28**

want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

The Idaho Supreme Court properly cited *Flores-Ortega* as the law governing claims of ineffective assistance for failing to file an appeal. (State's Lodging D-6 at 7.) The state court then went on to hold that, because Petitioner's sentences had been appealed as part of the direct appeal from the convictions, "a rational defendant would not desire to appeal the denial of the Rule 35 motion as well." (*Id.* at 8.) The court also relied on the fact that Petitioner's Rule 35 pleadings were specifically included in the record in that direct appeal. Therefore, Petitioner could not establish deficient performance or prejudice as required under *Strickland*.

The Court agrees. Petitioner has not established that his attorney acted objectively unreasonably in failing to file an additional appeal in the Rule 35 proceedings, because the sentences were, in fact, already under review in the state appellate court. Further, because all of the Rule 35 pleadings were included in the record in Petitioner's direct appeal, Petitioner suffered no prejudice from his attorney's failure to file an additional (and unnecessary) appeal from the denial of the Rule 35 motion. The Idaho Court of Appeals' decision on this claim was eminently reasonable.

### F.    *Claim 3(e): Failing to Consult with Petitioner before Filing the Rule 35 Motion*

In Claim 3(e), Petitioner asserts that his attorney rendered ineffective assistance in failing to consult with Petitioner prior to filing the Rule 35 motion for reduction of

sentence. He states that he "was never informed of what my Rule 35 would say or what was going on with it." (Dkt. 1-1 at 2.)

However, Petitioner has not demonstrated a reasonable probability that anything trial counsel should have included in the motion, but did not, would have resulted in a reduction of sentence. For this reason, the Idaho Court of Appeals' rejection of Claim 3(e) was not contrary to, or based on an unreasonable application of, *Strickland v. Washington*, nor was it based on an unreasonable finding of fact. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to relief on Claim 3(e).

### DISCUSSION OF CLAIM 4: FAILURE TO APPOINT POSTCONVICTION COUNSEL

Claim 4 asserts that the state district court violated the Constitution when it denied Petitioner's request for counsel during his postconviction proceedings. However, this claim is not cognizable in this federal habeas corpus proceeding.

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). Although the Supreme Court has established an equitable exception to the procedural default doctrine based on ineffective assistance of postconviction counsel, *see Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Court has not wavered from the rule in *Finley* that there is no freestanding claim of ineffective assistance of postconviction counsel in a federal habeas proceeding. Therefore, Claim 4 must be denied.

**MEMORANDUM DECISION AND ORDER - 30**

## CONCLUSION

For the foregoing reasons, Petitioner has not established that he is entitled to habeas relief under 28 U.S.C. § 2254(d). Therefore, the Petition must be denied.

## ORDER

**IT IS ORDERED:**

1.     The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED, and this entire action is DISMISSED with prejudice.

2.     The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: **February 4, 2016**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 31**